## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DARRYL JAMES GLOVER,     :    Civil Action No. 04-1989(NLH)
                         :
        Plaintiff,     :
                         :
     v.               :    **OPINION**
                         :
KIM WHITE, DUANE BROWN,    :
and FERNANDO MESSER,      :
                         :
        Defendants.    :

**APPEARANCES:**

Darryl James Glover
#09483-055
United States Penitentiary Canaan
P.O. Box 300
Waymart, PA 18472

     *Pro se*

Paul A. Blaine, Esquire
Office of the United States Attorney
Camden Federal Bldg & U.S. Courthouse
401 Market Street
4th Floor
Camden, NJ 08101

     *Attorney for Defendants*

**HILLMAN***,* District Judge

     This matter has come before the Court on Defendants' motion for summary judgment on Plaintiff's claims that while he was incarcerated Defendants violated his constitutional rights when they improperly opened his legal mail.  For the reasons expressed below, Defendants' motion will be granted.

## BACKGROUND

Plaintiff, Darryl James Glover, claims that during his incarceration at FCI Fairton, ten letters from his attorney were not handled in accordance with Bureau of Prison regulations. Glover claims that Defendants Kim White, Warden of FCI during part of the relevant time period, and Duane J. Brown and Fernando Messer, who successively served as the Inmate Systems Manager during the relevant time period, violated his constitutional rights by the improper handling of his legal mail and by retaliating against him for having complained about it.

Glover seeks an award of compensatory and punitive damages against each of them in their personal capacities, as well as declaratory relief.  Defendants have filed a motion for summary judgment on all of Glover's claims against them.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such

2

that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.    Mail Handling Regulations**

Federal Regulations and Bureau of Prison Regulations govern the handling of prisoner mail.  As authorized and suggested by the Federal Regulations, the warden is charged with establishing correspondence procedures for inmates in each institution.  See 28 C.F.R. § 540.10; P.S. 5800.10, Mail Management Manual, ¶ 301 (directing that "the Warden may establish controls to protect inmates and maintain the institution's security, discipline, and good order").  "All mail room staff shall be thoroughly familiar with the provisions of the Program Statements on Correspondence, which contains criteria for sending and receiving inmate correspondence. . . . Size and complexity of an institution, the degree of sophistication of the inmates confined, and many other variables (e.g. physical plant) require flexibility in correspondence procedures."  P.S. 5800.10, ¶ 301.

All mail except for "special mail" is to be opened, inspected and randomly read by mail room staff.  Id. ¶ 304; 28 C.F.R. § 540.14.  "Special mail," which includes legal mail, must only be opened "in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail."  28 U.S.C. § 540.18; P.S. 5800.10, ¶ 305.  "The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "'Special Mail--Open only in the presence of

4

the inmate.'"  28 C.F.R. § 540.18.  In the absence of the required marking, the staff may treat the mail as general correspondence and may open, inspect, and read the mail.  Id.

Specifically with regard to legal mail, if the sender has properly marked the envelope as specified by § 540.18, the staff is to "mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter."  Id. § 540.19.  It is the inmate's responsibility to advise "any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "'Special Mail--Open only in the presence of the inmate.'"  Id.

The BOP Mail Management Manual provides further instruction on how mail room staff shall handle legal mail.

> The Bureau has prepared an instruction sheet, BP-493 (BP-S493)for an inmate to include with correspondence sent by the inmate to the attorney representing that inmate. This instruction sheet advises the attorney of the required procedures for incoming attorney-client correspondence to be afforded special mail privileges. Specifically, the attorney must be adequately identified on the envelope as an attorney and the envelope must be marked "Special Mail - Open Only in the Presence of the Inmate," or with similar language clearly indicating that particular item of correspondence qualifies as special mail and the attorney is requesting the correspondence be opened only in the inmate's presence. Inmate Systems Managers

shall ensure that copies of the instruction sheet for
special mail handling of incoming attorney-client
correspondence are provided as admission and
orientation hand-outs and are placed in inmate housing
areas, attorney visiting rooms, and other locations
accessible to inmates.

The use of the title "Esquire" without additional
indication of the sender's occupation does not
establish the bearer as an attorney or legal aid
supervisor. Mail from individuals using the title
"Esquire" as the exclusive identification of their
status shall not be handled as special mail, even if
the envelope contains some special mail markings.
However, use of the title "Esquire" after the sender's
name, in addition to the same name being included in
the return address of the law office, does sufficiently
identify the sender as an attorney. Alternatively, the
use of the term "Esquire" after the sender's name, in
addition to some notation on the envelope that the
sender is an attorney, i.e., Attorney-Client
Communication, is also sufficient identification.

P.S. 5800.10, ¶ 305.

The manual also directs that "Inmate Systems Managers shall

periodically review the special/legal mail delivery process to

ensure that policy requirements are met." Id.  ¶ 306.

## C.  Letters at Issue

There are ten letters that Glover claims Defendants did not

handle according to proper procedure.[1]  The first six of the

---

[1]In his Complaint, Glover claims that there are ten letters
that were not handled properly, but two of the letters were
received or opened at the prison after Defendants' tenure there:
a letter postmarked January 22, 2004 and January 23, 2004 that
was sent from the Clerk of the U.S. District Court in Buffalo,
New York and a letter postmarked on January 24, 2005 that was
sent from "Kimberly A. Schechter, Attorney" "Assistant Federal
Defender."  These letters were handled as special mail.  Because
of that, and the fact that they were received when none of the
Defendants were still working at FCI Fairton, these two letters

letters listed the return name and address as "Kimberly A. Schechter, Esq., Federal Defender's Office, 300 Pearl Street, Suite 450, Buffalo, New York 14202" (hereinafter the "Esquire" letters).  They were postmarked April 3, April 10, April 25, May 7, May 9, and May 24, 2002.  These letters also appear to have stamped on them, "LEGAL MAIL" "SPECIAL MAIL - OPEN ONLY IN THE PRESENCE OF THE INMATE."  Two more letters postmarked July 3 and July 22, 2002 were sent from Ms. Schechter to Glover, and these two letters contained the same name and return address, but the "Esq." was replaced with "Attorney-At-Law" (hereinafter the "Attorney-At-Law" letters).  They also had "LEGAL MAIL" "SPECIAL MAIL - OPEN ONLY IN THE PRESENCE OF THE INMATE" stamped on them.

When the mail room staff received four of the Esquire letters, postmarked April 25, May 7, May 9 and May 24, 2002, they were not handled as legal mail and were stamped with "This Correspondence does not meet BOP criteria for Special Mail Handling."  Two of the other Esquire letters, postmarked April 3 and April 10, 2002, were not stamped by mail room staff that the letters did not qualify for special handling, but it appears that

---

will not be considered as part of Glover's claims.

Correspondingly, Defendant Messer was not employed at FCI Fairton during the time any of the subject letters were received at the prison, and thus he cannot be personally liable for the opening of the letters.  Because Glover's claims against the other two Defendants fail as well, it is unnecessary to conduct a separate analysis for this Defendant.

Defendants concede that these other two Esquire letters were not
handled as special mail. (See Def. Brief at 19; Def. Reply Brief
at 1-2; Certification of Roberta M. Truman, ¶ 10.)  The two
Attorney-At-Law letters were handled as special mail, which is
confirmed by the special mail log books.  (See Truman Cert., ¶
10.)

**D.    Exhaustion of Administrative Remedies**

Defendants do not contest that Glover exhausted his
administrative remedies with regard to the six letters that did
not receive special handling.  On June 28, 2002, Glover filed a
"Request for Administrative Remedy," in which he claimed that
despite his attorney's envelopes being appropriately marked, they
were "being opened, inspected, and possibly read, outside of my
presence."

Defendant White responded to Glover's complaint, denying his
request for administrative remedy.  She explained that according
to the regulations, his attorney's use of "Esquire" instead of
"Attorney" was not sufficient to implicate the special mail
handling procedure.  White specifically referred to P.S. 5800.10,
¶ 305: "The use of the title 'Esquire' without additional
indication of the sender's occupation does not establish the
bearer as an attorney or legal aid supervisor.  Mail from
individuals using the title 'Esquire' as the exclusive
identification of their status shall not be handled as special

8

mail, even if the envelope contains some special mail markings." She also referred to 28 C.F.R. § 540.19 to remind Glover that it is the inmate's responsibility to advise "any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "'Special Mail--Open only in the presence of the inmate.'"[2]  White concluded that because the envelopes Glover provided for her review "did not meet policy," he was "not afforded the privileges of special mail handling and the letters were opened."

On July 16, 2002, Glover appealed White's decision to the Regional Director of the Northeast Regional Office, arguing that "it is complete non-sense" for his legal mail to be "subjected to such a stingy definition as not to include "Esquire" as to mean "Attorney"."  On August 16, 2002, the Regional Director, M.E. Ray, issued his Response to Glover's appeal.  Ray recognized that the Mail Management Manual states that the use of "Esquire" without any additional indication does not establish the sender as an attorney, and that mail from individuals using the title "Esquire" as the exclusive identification of their status should not be handled as special mail.  Ray differed his interpretation

---

[2]In her Response, White emphasized the word "attorney" in italics and bold font.

of the regulations from Defendant White and Brown's interpretation, and determined that in "this case of the correspondence in question, the use of the title 'Esquire' after the sender's name, with the term Federal Defender's Office and the 'special mail' markings included on the envelope have been determined to be sufficient identification for the correspondence to be handled as special mail."  Ray continued his assessment of the situation: "Although this piece of correspondence was opened in error, the Inmate Systems Manager at FCI Fairton has ensured that additional training will be conducted and all precautions will be taken to ensure that errors in mail processing do no[t] recur."  Ray held that Glover's administrative remedy request was granted in part.

On September 4, 2002, Glover appealed the Regional Director's decision to the General Counsel for the Federal Bureau of Prisons.  Harrell Watts, Administrator for National Inmates Appeals, held that the Warden and Regional Director adequately addressed Glover's issues raised in his appeal.  Watts also determined that "the legal mail addressed to you was opened in error.  We find that this administrative error was not deliberate.  The institution has taken corrective measures to ensure that mail is processed in accordance with policy.  Every effort is being made by institution staff to process special mail in accordance with special mail handling procedures."

10

**E.   Analysis**

The only difference between Glover's legal mail that did not receive special handling and the legal mail that did receive special handling is the sender's use of "Esq." instead of "Attorney-At-Law."  Contrary to the contention of the Regional Director and Administrator for National Inmates Appeals, Defendants argue that the handling of Glover's six letters as regular mail was not "an error," but rather complied with the regulations.  Glover also disagrees with the view that the opening of his mail was an error, but argues that his mail was opened in knowing violation of the regulations.

Even though prisoners, by virtue of their incarceration, "do not forfeit their First Amendment right to use of the mails," Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (citations and quotations omitted), that right may be limited by prison regulations that are reasonably related to legitimate penological interests.  Turner, 482 U.S. at 92.  But, a "pattern and practice of opening properly marked incoming legal mail outside an inmate's presence infringes communication protected by the right to free speech . . . because it chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Jones, 461 F.3d at 358-59.

Here, however, the issue is not whether the special mail

11

handling regulations are constitutional,[3] or whether a pattern and practice of opening properly marked mail existed at FCI Fairton.  Instead, the issue is whether the six letters sent to Glover by his attorney were in fact marked properly according to federal and BOP regulations.  The resolution of this issue rests on the scope of a prison official's authority to interpret those regulations.

Decisions of prison administrators are entitled to great deference.  <u>Turner v. Safley</u>, 482 U.S. 78, 98 (1987); <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002).  "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).  This is because:

> Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decisionmaking process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.

---

[3]Glover does not challenge the constitutionality of the regulations.

Turner, 482 U.S. at 89.  The regulations themselves also allow
for a prison official's discretion in their interpretation.  See
28 U.S.C. § 540.12; P.S. 5800.10, ¶ 301 ("Size and complexity of
an institution, the degree of sophistication of the inmates
confined, and many other variables (e.g. physical plant) require
flexibility in correspondence procedures.").

Defendants argue that Brown's interpretation of the Federal
Regulations and the BOP Mail Handling Manual supported his
staff's actions to not handle Glover's six letters as special
mail.  Glover argues that it was an overly-strict interpretation,
which resulted in the violation of his constitutional rights.

As already set forth fully above, the regulations provide
that the use of "Esquire" as the exclusive identification of a
sender's status on an envelope shall not be treated as special
mail even if the envelope contains some special markings.[4]  See
P.S. 5800.10, ¶ 305.  Additionally, the regulations direct that
it is an inmate's responsibility to advise his attorney that
correspondence will be handled as special mail only if the
envelope is marked with the attorney's name and an indication
that the person is an attorney, in addition to the front of the
envelope being marked "Special Mail--Open only in the presence of
the inmate."  See 28 C.F.R. § 540.19.  Here, the six letters from

---

[4]The apparent penological purpose of this regulation is to
prevent a non-attorney sender from evading the normal screening
process simply by adding "Esquire" to the end of his or her name.

13

Glover's attorney that were not handled as special mail were marked with "Esquire" and "Special Mail--Open only in the presence of the inmate."  In contrast, the two other letters from Glover's attorney that were marked "Attorney-At-Law" and "Special Mail--Open only in the presence of the inmate" were treated as special mail.  A plain reading of the regulations support this application of the regulations.[5]

On appeal of the White's affirmation of Brown's interpretation, the Regional Director acknowledged the language of the regulations, but determined that in "this case of the correspondence in question, the use of the title 'Esquire' after the sender's name, with the term Federal Defender's Office and the 'special mail' markings included on the envelope have been determined to be sufficient identification for the correspondence to be handled as special mail."  The General Counsel for the Federal Bureau of Prisons affirmed the Regional Director's decision.  Despite the prison officials' opposing interpretation of the mail handling regulations, however, it is not the Court's role to be the "primary arbiter" of what constitutes the best interpretation.  Rather, prison officials must be given "wide-

_____

[5]Indeed, in a letter to his attorney, which was provided to Defendants during discovery and attached to their brief in support of their motion for summary judgment, Glover states, "I suppose had your stationary properly identified you as 'attorney' as opposed to 'esquire', they would've had to follow policy by opening the mail in my presence."  (Def. Ex. 3.)

ranging" deference in the execution of policies, and the Court cannot substitute its judgment for that of prison officials'.

Glover's administrative remedy request served the purpose for which administrative remedies exist--to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. See 29 C.F.R. § 542.10(a). Glover felt that Brown's interpretation of the regulations was "stingy," and sought relief through the administrative process. Glover's request for a less-strict interpretation of the regulations in his case was granted on appeal, and there is no evidence that following the final resolution of his appeal, any of his legal mail marked identically to his six letters at issue were not provided with special mail handling.

Even if Brown's interpretation was not supported by a plain reading of the regulations, Defendants would be entitled to qualified immunity. Government officials are entitled to immunity from damage liability if their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jones v. Brown, 461 F.3d 353, 364 (3d Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Thus, in order for Defendants to be held liable for violating Glover's First Amendment rights, Glover would have to show that they did not reasonably believe that they were acting in the interest of inmate and staff health and safety

15

by applying their interpretation of mail handling regulations to Glvoer's mail.  <u>See</u> <u>id.</u>  No evidence has been presented to support that contention.  As a result, Glover's claim that Defendants violated his First Amendment rights must fail.

Additionally, Glover's claims of Defendants' retaliation and White's supervisory liability for failure to adequately train and supervise must also fail.  Where a plaintiff seeks to establish liability based on a supervisor's failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-92 (1989); <u>Stoneking v. Bradford Area School Dist.</u>, 882 F.2d 720, 724-26 (3d Cir. 1989), <u>cert. denied</u>, 493 U.S. 1044 (1990).  For a retaliation claim, a prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered "adverse action" at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002)(citation omitted).  Glover has not presented any evidence to support either of these claims.

16

## **CONCLUSION**

For the reasons expressed above, Defendants are entitled to summary judgment in their favor on all of Glover's claims against them.  An appropriate Order will issue.


Dated: December 7, 2006              s/ Noel L. Hillman_____

At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

17